IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TIME WARNER TELECOM OF OREGON, LLC, and QWEST COMMUNICATIONS CORP., | ) ) ) | |
| Plaintiffs, | ) ) ) | CV 04-1393-PA |
| v. | ) ) | **OPINION** |
| THE CITY OF PORTLAND, | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| QWEST CORP., | ) ) | CV 05-1386-PA |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THE CITY OF PORTLAND, | ) ) ) | |
| Defendant. | ) | **CONSOLIDATED CASES** |

**PANNER, J.**

Plaintiff Qwest Corp. (Qwest) sells telecommunications services in Oregon. Qwest has a temporary revocable permit with the City of Portland (the City) that allows Qwest to install and

1 - OPINION

operate telecommunications systems in City streets.

In this action against the City, Qwest claims that the City's operation of a fiber optic network, the Integrated Regional Network Enterprise (IRNE), violates federal law, and that the City illegally provides telecommunications services outside the City limits.

The parties move for summary judgment. I grant the City's motion and deny Qwest's motion.

## DISCUSSION

In the companion case, Time-Warner v. City of Portland (Time-Warner), this court held that the Telecommunications Act of 1996, 47 U.S.C. § 253, did not preempt IRNE's sales of telecommunications services to other governments and public schools. In the following discussion, I assume familiarity with the Time-Warner opinion. Because Qwest's motion for summary judgment was argued after this court issued the Time-Warner decision, Qwest's motion has become in effect a motion to reconsider this court's prior rulings on IRNE's validity.

### I.  In-Kind Contributions

Qwest, like the plaintiffs in Time-Warner, attacks the City's use of in-kind contributions from telecommunications franchisees to help create IRNE's fiber optic network. Qwest characterizes in-kind contributions as "extortion," and claims that they give the City an unfair competitive advantage over

2 - OPINION

private telecommunications providers.

### A. Issue Preclusion

Qwest argues that Magistrate Judge Ashmanskas's opinion in <u>City of Portland v. Electric Lightwave, Inc.</u>, Civ. No. 03-538-AS (D. Or. May 5, 2005) (<u>ELI</u>), bars the City from contending here that in-kind provisions are not preempted. Qwest relies on the doctrine of issue preclusion. To establish that issue preclusion applies, Qwest bears the burden of showing that the issue litigated and decided in <u>ELI</u> was identical to the issue litigated here. See <u>State Farm Fire & Cas. Co. v. Century Home Components</u>, 275 Or. 97, 104-05, 550 P.2d 1185, 1188-89 (1976).

In <u>ELI</u>, Judge Ashmanskas held that § 253 preempted the in-kind provisions of Electric Lightwave's franchise agreement with the City. That ruling was based on an analysis of the specific franchise agreement at issue there. Judge Ashmanskas did not rule that all in-kind provisions are preempted by § 253. Whether § 253 preempts an-kind provision on the precise wording of the particular provision and on the franchise agreement as a whole. Because the issue litigated in <u>ELI</u> was not identical to the issue here, the decision in <u>ELI</u> has no preclusive effect.

### B. The Challenge to In-Kind Provisions Fails

Qwest characterizes in-kind contributions as subsidies. I agree, however, with the City's expert economist, Ed Whitelaw, that the in-kind contributions here are not subsidies.

3 - OPINION

Franchisees provide in-kind contributions to the City in exchange for the valuable right to use the City's streets for telecommunications networks. See TCG New York, Inc. v. City of White Plains, 305 F.2d 67, 80 (2d Cir. 2002) (cities "retain the flexibility to adopt mutually beneficial agreements for in-kind compensation").

Qwest contends that in-kind contributions "have the effect of lowering IRNE's prices on competitive services by 50%." Qwest Supp. Submission 2. However, the record shows that in-kind contributions supply only about 10% of IRNE's fiber, and that the value of the in-kind contributions is a small fraction of the City's total investment in IRNE. The City's use of in-kind contributions does not explain why IRNE is able to charge half of what Qwest charges for comparable services.

Regardless of how much in-kind contributions lower IRNE's prices, Qwest has not shown that IRNE's prices may have the effect of prohibiting the provision of any telecommunications service. See Qwest Communications Inc. v. City of Berkeley, 433 F.3d 1253, 1256-57 (9th Cir. 2006) (telecommunications plaintiff must show only that a regulation or legal requirement may prohibit it from providing a telecommunications service). A customer's decision to purchase from IRNE rather than Qwest is not a prohibition or potential prohibition that would fall within the scope of § 253 preemption.

4 - OPINION

## II. Intergovernmental Agreements

Like the plaintiffs in <u>Time-Warner</u>, Qwest attacks the City's use of intergovernmental agreements (IGAs) in creating IRNE and in providing telecommunications services to governments and public schools. Qwest claims it is not challenging the IGAs themselves, but the City's use of assets obtained through IGAs.

To help create IRNE, the City, with the Oregon Department of Transportation and the Tri-Metropolitan Transportation District (Tri-Met), formed the Cooperative Telecommunications Infrastructure Committee (CTIC), through an IGA. CTIC members share fiber, providing 38% of IRNE's network. Qwest contends that the CTIC IGA gives the City an unfair advantage over private telecommunications providers.

Qwest's challenge to IGAs fails for the same reasons that the plaintiffs' challenge failed in <u>Time-Warner</u>. Nothing prevents Qwest from entering into similar resource-sharing agreements with other private carriers or with governments. In any event, § 253 does not apply here because the City's use of fiber through the CTIC IGA is not a "regulation" or "legal requirement" imposed on Qwest or any other private carrier.

Nor is the fiber obtained through the CTIC IGA "free" to the City, as Qwest argues. The IGA requires that the parties share their resources, creating a mutually beneficial barter relationship.

5 - OPINION

Qwest claims that the City improperly circumvents public bidding when the City enters into IGAs with other governments for the sale of IRNE's services. However, the statutes authorizing IGAs specifically exempt IGAs from public bidding requirements. Or. Rev. Stat. § 279A.025(2)(a).

## III.  The Relevant Market

IRNE sells telecommunications services only to local governments and public schools. The City states that it has no intention of selling IRNE's services to any private businesses or individuals. Under these facts, Qwest can portray IRNE as a viable competitor only by defining the market as narrowly as possible. This is a time-honored tactic used by plaintiffs in antitrust litigation.[1] Here, the tactic is out of place because the concept of a relevant market has no place in determining whether § 253 preemption applies. Regardless of IRNE's market power, a governmental agency's decision to purchase telecommunications services from IRNE is not equivalent to an actual or a potential prohibition of a telecommunications service. (That is assuming that IRNE's conduct in the market could be considered a "regulation" or "legal requirement.")

---

[1]  See, e.g., Robert Pitofsky, New Definitions of the Relevant Market and the Assault on Antitrust, 90 Colum. L. Rev. 1805, 1816, (1990) ("There will almost always be classes of customers with strong preferences but to reason from the existence of such classes to a conclusion that each is entitled to a separate narrow market definition grossly overstates the market power of the sellers.").

6 - OPINION

Qwest refers in its briefs to "the relevant market" and to "the government and education market in Portland." <u>See</u> Qwest Opp. to Mot. for Summ. J. 4 ("The relevant market in this case is not the national telecommunications market, or even the Portland market. IRNE only operates in the Portland governmental and educational market . . . ."); <u>id.</u> at 9 ("The only relevant market is the governmental and educational market in Portland"); Qwest Mem. in Supp. of Summ. J. 18 ("IRNE and [Qwest] compete in the same government and education market." (footnote omitted)); Qwest Reply in Supp. 6 ("IRNE competes in the marketplace for public-sector customers."). Qwest claims IRNE has caused Qwest to lose "11 percent of [its] annual revenue in the government and education market in the Portland area." Qwest Mem. in Supp. 19 (claiming that Qwest loses about $50,000 per month because of competition from IRNE).

Because of these frequent references to the relevant market, at oral argument I asked counsel for Qwest whether any legal authority defined the "relevant market" for the preemption analysis under § 253. Counsel knew of no such authority. In a supplemental brief filed after oral argument, Qwest stated that it was "concerned" that this court "has or will adopt a 'relevant market impact' standard." This court has no such intention.

**IV.   IRNE's Service to Non-Inhabitants**

Qwest contends that because IRNE provides services outside

7 - OPINION

City limits, the City is violating section 10-102 of the City Charter, which allows the City to operate projects like IRNE "for the purpose of serving the City and the people thereof for uses public and private." Qwest contends that the City is also violating Or. Rev. Stat. § 225.110, which allows cites to operate telephone systems: "When authorized by its charter . . . , a city may purchase, build, own, operate and maintain telephone or telegraph systems within or without its boundaries, for the benefit and use of its inhabitants at cost or for profit."

Neither the City Charter nor any Oregon statute prohibit the City from providing services through IRNE to other government entities outside the City limits. Connections to governments outside City limits benefit the City because the connections are two-way. For example, sharing law enforcement information with the City of Hillsboro benefits both cities. IRNE receives revenue from IRNE's customers, which also benefits the City. Most importantly, neither the statute nor City Charter provision can be read as restrictively as Qwest argues. The State authorizes the City to own property for any "general benefit and use of the people within or without the city." Or. Rev. Stat. § 223.005(2).

/ / /

/ / /

/ / /

8 - OPINION

## CONCLUSION

Qwest's motion for summary judgment (#169) is denied. The City's motion for summary judgment (#162) is granted.

DATED this 10 day of May, 2006.

_____
OWEN M. PANNER
U.S. DISTRICT COURT JUDGE

9 - OPINION